IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Edwin Reeves Hazel, III, ) | |
| ) | |
| Plaintiff, ) | Case No. 8:10-cv-00524-RMG-JDA |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Captain C. McElvogue, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court on a motion for summary judgment filed by Defendant. [Doc. 76.] Plaintiff was a pretrial detainee in the custody of Hill-Finklea Detention Center ("HFDC") at the time this action was filed.[1] [Doc. 1.] Plaintiff is proceeding *pro se* and brought this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

Plaintiff filed this action on March 5, 2010, alleging "deliberate malice, deliberate indifference, conditions of confinement, cruel and unusual punishment, [and] punishment without Due Process" by Defendant. [Doc. 1 at 2.] Defendant filed his first motion for summary judgment on May 27, 2010. [Doc. 21.] Plaintiff filed a response on June 24, 2010. [Doc. 25.] The Court filed a Report and Recommendations on September 28, 2010, recommending that Defendant's motion for summary judgment be denied as premature

---

[1] Plaintiff is now in custody at Ridgeland Correctional Institute. [Doc. 24.]

because additional discovery was needed to ascertain which, if any, grievance procedures were available to Plaintiff. [Doc. 45.] The District Court adopted the Report and Recommendations, denying Defendant's motion for summary judgment and granting Defendant leave to refile after a reasonable time for discovery regarding the grievance procedures available to Plaintiff. [Doc. 58.]

Defendant filed the instant motion for summary judgement on January 24, 2011. [Doc. 76.] Plaintiff filed a response to the motion on March 4, 2011. [Doc. 93.]

## **BACKGROUND**

Plaintiff alleges that on February 10, 2010, two of Plaintiff's roommates got into a fight while Plaintiff was out of the cell for a shower and exercise. [Doc. 1 at 3.] Plaintiff alleges that after the fight, Defendant (1) classified Plaintiff as "disciplinary" without charging Plaintiff with an infraction; (2) denied Plaintiff visitation for two weeks; (3) fed Plaintiff Nutraloaf three meals a day for two weeks (February 10–25, 2010), with the exception of six meals; (4) denied Plaintiff a mattress and blanket for five days (February 10–15, 2010); (5) allowed Plaintiff to receive only four showers over two weeks (February 10–25, 2010); and (6) denied Plaintiff his personal belongings for a week (February 10–17, 2010), and when his belongings were returned, two of Plaintiff's legal documents were missing and his Bible was torn. [Doc. 1 at 3–4.] Plaintiff seeks a federal investigation into Defendant's conduct and actions and punitive damages in the amount of $20,000,000. [Doc. 1 at 3–4.]

Defendant contends that Plaintiff's Complaint makes it seem as if Plaintiff had nothing to do with a fight on February 10, 2010 but that the Incident Report from the fight tells a completely different story. [Doc. 76-1 at 4 (citing Doc. 76-2 at 26–27).] Defendant

states that according to the Incident Report, there was an altercation among Plaintiff's roommates over the use of one roommate's telephone PIN. [*Id.*] Defendant alleges that Plaintiff admits that Plaintiff cheered during the fight, citing Defendant's deposition of Plaintiff.[2] [*Id.*] Additionally, Defendant contends that a search of Plaintiff's cell following the assault revealed that Plaintiff and his roommates possessed several items of contraband, including a deck of playing cards, three pencils, one lighter, two pens and one razor. [*Id.*] Defendant alleges Plaintiff admits that a deck of cards, a couple of pencils, and an ink pen belonging to Plaintiff were found in the cell, citing Defendant's deposition of Plaintiff. [*Id.*] Defendant contends that as a result of the fight and the contraband found in their cell, Plaintiff and his roommates were moved to a holding cell and placed on a Nutraloaf diet. [*Id.*]

Defendant argues that the Court should enter summary judgment in Defendant's favor because (1) Plaintiff has failed to show that Plaintiff's constitutional rights have been violated; (2) the alleged actions/inactions claimed by Plaintiff do not constitute cruel and unusual punishment; (3) the decision to place Plaintiff in disciplinary segregation due to multiple disciplinary infractions does not constitute a violation of due process; (4) Plaintiff has failed to exhaust his administrative remedies as required under 42 U.S.C. § 1997e; (5) Defendant is entitled to qualified immunity; (6) Defendant is entitled to Eleventh Amendment immunity; and (7) Defendant is provided immunity under the South Carolina Tort Claims Act. [Doc. 76-1.]

---

[2] Defendant notes that the parties dispute Plaintiff's level of involvement in the fight. [Doc. 76-1 at 4.] Defendants also submitted the affidavit of one of Plaintiff's roommates, Robert Davis, who stated that Plaintiff instigated the fight between two of Plaintiff's other roommates. [Doc. 91-1.]

3

## APPLICABLE LAW

**Liberal Construction of *Pro Se* Complaint**

Plaintiff brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may

5

fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(e). Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact and (2) he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Exhaustion of Administrative Remedies**

The Court will first consider Defendant's claim that he is entitled to summary judgment on Plaintiff's claims because Plaintiff failed to exhaust his administrative remedies prior to initiating litigation as required by 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act ("PLRA") defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The PLRA requires that a prisoner exhaust administrative remedies before filing a § 1983 action concerning his confinement. 42 U.S.C.A. § 1997e(a). The Supreme Court held that the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

A prisoner's failure to exhaust administrative remedies is an affirmative defense that must be properly raised by the defendant. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005); *see also Jones v. Bock*, 549 U.S. 199, 216 (2007). Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones*, 549 U.S. at 218. However, as the United States Supreme Court has emphasized, a prisoner can exhaust only those administrative remedies that are available to the prisoner. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Prisoners must now exhaust all

'available' remedies, not just those that meet federal standards."); 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . until such administrative remedies as are *available* are exhausted." (emphasis added)).

In the present action, Defendant has failed to show that HFDC has a grievance procedure that was available to Plaintiff within the meaning of the PLRA. In response to the Court's first Report and Recommendations, which noted the lack of evidence of an available grievance procedure, Defendant submitted his affidavit, stating that a grievance policy existed at HFDC throughout the time Plaintiff was detained at HFDC. [Doc. 76-2 at 1.] In his affidavit, Defendant refers to the grievance policy outlined in the HFDC Inmate Rules ("Inmate Rules") [*Id.*], and Defendant submitted a copy of the 2005 version of the Inmate Rules in response to the Court's order for Defendant to file materials to support Defendant's position that HFDC had an available grievance procedure at the time relevant to Plaintiff's Complaint [Doc. 38-1]. However, Defendant never avers that HFDC inmates receive a copy of these rules. [*See* Doc. 76-2.] More specifically, Defendant never avers that Plaintiff ever saw these rules. [*See id.*]

Moreover, Plaintiff has continuously argued that HFDC does not have a grievance policy, and the Court has repeatedly indicated that there is a lack of evidence regarding HFDC's grievance policy and the availability of grievance procedures. [Docs. 32, 58.] In other lawsuits against Defendant and other HFDC employees, Plaintiff also has maintained his position that HFDC does not have a grievance procedure. [*See, e.g.*, C/A No. 8:09-cv-3276.] Defendant has responded by producing documents that show that a grievance procedure exists [Doc. 38-1; Doc. 38-3], but Defendant has failed to show that this procedure is available for purposes of the PLRA to HFDC inmates because Defendant has

9

not shown that HFDC inmates know about the grievance procedure. Defendant claims that Plaintiff submitted two grievances, one on January 11, 2010 and one on January 12, 2010; one Inmate Request Form ("IRF") on March 19, 2010; and one undated, handwritten document that attempted to negotiate for better privileges in exchange for Plaintiff dropping lawsuits against Defendant. [Doc. 76-2 at 1.] Plaintiff claims that he submitted four grievances, and Plaintiff filed a copy of one of these grievances [Doc. 1 at 2; Doc. 25-4 at 3], but Defendant denies that Plaintiff filed these grievances because the grievances do not appear in Plaintiff's inmate file [Doc. 76-2 at 1]. Defendant alleges that Plaintiff's January 11, 2010 grievance was answered, but the January 12, 2010 grievance was not answered because it was repetitious, which is a violation of the Inmate Rules. [*See id.*] Further, Defendant admits that HFDC employees hid Plaintiff's March 19, 2010 IRF. [*Id.*] On the basis of Plaintiff's and Defendant's allegations, the Court cannot hold that Defendant, at this posture, has carried his burden of proof on his exhaustion argument, where genuine issues of material fact exist as to whether HFDC has a grievance procedure that is available to inmates and whether Plaintiff has exhausted available remedies under such procedure. Accordingly, the Court will address the merits of Plaintiff's allegations.

As a public official, Defendant is subject to suit for damages in his individual capacity in a § 1983 lawsuit, *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991). Accordingly, the Court will consider whether Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether Defendant violated Plaintiff's constitutional rights.

**Plaintiff's Claims of Deliberate Malice and Indifference/ Retaliation**

To the extent that Plaintiff's allegations that Defendant acted with deliberate malice and indifference toward Plaintiff states a claim of retaliation for Plaintiff filing lawsuits against Defendant, Plaintiff has failed to create a genuine issue of material fact. To state a claim that is not legally frivolous, a plaintiff whose cause of action is based on retaliation must "allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citing *Neitzke v. Williams*, 490 U.S. 319, 328 (1989)). Moreover, courts treat with skepticism retaliation claims by prisoners because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Id.* at 74.

Plaintiff alleges that Defendant's retaliation was in response to other lawsuits Plaintiff had filed against Defendant. [Doc. 1 at 3.] A prisoner has a constitutionally protected right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977) (citing *Ex parte Hull*, 312 U.S. 546 (1941)). To state a claim of infringement of that right, a prisoner must include in his complaint factual allegations that tend to support his claim of deprivation of access. *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989). "A prisoner must also identify an actual injury resulting from official conduct." *Strickler v. Waters*, 989 F.2d 1375, 1382–85 (4th Cir. 1993).

While Plaintiff states a non-legally frivolous claim, Plaintiff fails to create a genuine issue of material fact because he has failed to state an injury resulting from Defendant's alleged retaliation. Plaintiff did not allege any facts in his Complaint that tend to show

Defendant's alleged retaliation impeded Plaintiff's access to the courts. Moreover, Plaintiff failed to present any facts in any affidavits or other submissions to the Court that tend to show an injury with respect to Plaintiff's access to the courts. Therefore, Plaintiff has not shown specific facts that indicate that there is a genuine issue for trial with respect to Plaintiff's retaliation claim.

**Plaintiff's Claims Regarding Conditions of Confinement**

With respect to Plaintiff's claims about his conditions of confinement at HFDC, as a pretrial detainee during the time period set forth in the Complaint, Plaintiff's claims are evaluated under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, which is used to evaluate conditions of confinement for those convicted of crimes. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). In any event, "[t]he due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner . . . ." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988).[3]

Pretrial detainees, however, have not been adjudicated guilty of a crime and may not be subjected to any form of "punishment." *Martin*, 849 F.2d at 870. To establish that a condition or restriction of confinement is constitutionally impermissible "punishment," a pretrial detainee must show "either that it was (1) imposed with an expressed intent to

---

[3] Under the Eighth Amendment, a prison official cannot be liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). To satisfy the objective component the test articulated in Farmer and show that a deprivation is extreme enough to constitute an Eighth Amendment claim, "a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (quoting Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993)).

punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 538–40 (1979)). Courts may infer that a restriction or condition is not reasonably related to a legitimate governmental objective, and is therefore punishment, if the restriction is arbitrary or purposeless. *Bell*, 441 U.S. at 539. However, while the purpose of pretrial confinement is to insure the detainee's presence at trial, the detention center may impose restraints on the detainee that are reasonably related to the detention center's interest in maintaining the facility's security, even if the restraints "are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Id.* at 539–40.

During the time period set forth in the Complaint, Plaintiff was a prisoner in a county detention center, not a guest in a hotel, and it should be expected that conditions in such a setting are often times less than ideal. *See, e.g.*, *id.* at 537 ("[T]he fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'"); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) ("Inmates cannot expect the amenities, conveniences and services of a good hotel."). As discussed below, Plaintiff alleges only one injury as a result of the conditions of which he complains and has failed to set forth any facts or evidence to establish that the conditions of confinement resulted in any violation of his constitutional rights. Therefore, Plaintiff's allegations about the conditions at HFDC are insufficient to give rise to a genuine issue of fact as to whether any of his constitutional rights were violated.

13

As to Plaintiff's one allegation of injury, Plaintiff alleges that his Nutraloaf diet caused him severe stomach pains, gas, and diarrhea. [Doc. 1 at 4.] The Constitution compels only that a prisoner be provided a nutritionally balanced meal that will maintain his health. *See LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (finding that inmate's complaint regarding the use of Nutraloaf does not rise to the threshold level of a constitutional deprivation). Moreover, Defendant provided evidence that HFDC employees followed HFDC policy while Plaintiff was on a Nutraloaf diet; that policy includes feeding a prisoner who is on a Nutraloaf diet at least one hot meal after the prisoner has received three Nutraloaf meals. [Doc. 76-2 at 38–43.] A prison regulation infringing a prisoner's constitutional rights is valid if the regulation "is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Supreme Court, in *Turner*, articulated a four-part test to determine whether a prison regulation is reasonable,[4] but as Plaintiff does not challenge the validity of HFDC's regulations nor has he come forward with any evidence to support his bare assertion of an injury from his Nutraloaf diet, the Court has no bases for finding the regulations unreasonable. Further, Plaintiff has not alleged that Defendant did not provide Plaintiff with a nutritionally balanced meal or follow HFDC policy. Therefore, Plaintiff has not created a genuine issue of material fact with respect to his conditions of confinement claim, to the extent that claim is based on his diet of Nutraloaf.

---

[4] There are four factors to determine if a prison regulation that infringes a prisoner's rights is reasonable: (1) whether there is a valid, rational connection between the regulation and "the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) how accommodating the asserted constitutional right will impact guards and other prisoners; and (4) whether there are ready alternatives to the regulation. *Turner*, 482 U.S. at 89–91 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)).

As to Plaintiff's remaining allegations regarding conditions of confinement—(1) that Plaintiff was classified as "disciplinary" without being charged with an infraction; (2) that Plaintiff was denied visitation for two weeks; (3) that Plaintiff was denied a mattress and blanket for five days; and (4) that Plaintiff was allowed to receive only four showers over a fifteen day period—Plaintiff has failed to allege that Defendant violated any of Plaintiff's constitutional rights. *See Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) (holding that changes in conditions of confinement and the denial of privileges are matters that every prisoner can anticipate and are necessarily functions of prison management and must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently). First, Plaintiff has failed to allege any injury resulting from being classified as disciplinary without being charged with an infraction. Moreover, Defendant has produced incident reports and Administrative/Disciplinary Review Board decisions that contradict Plaintiff's allegation that Defendant charged Plaintiff with an infraction without Plaintiff knowing the charge. [Doc. 76-2 at 26–27, 33–37.] Plaintiff has failed to produce any evidence to contradict Defendant's evidence. Therefore, Plaintiff has failed to establish a genuine issue of material fact as to whether Defendant violated Plaintiff's constitutional rights by classifying Plaintiff as disciplinary without charging Plaintiff with an infraction.

Second, Plaintiff failed to allege any injury resulting from being denied visitation. Further, Defendant produced the HFDC Inmate Hand Guide, which states that visitation is a privilege that "may be reduced or temporarily suspended in the event that inmates abuse such privilege[] or become a disciplinary problem, or pose a danger to the staff, other inmates, or safety and security of the facility." [Doc. 76-2 at 58–59.] Plaintiff has not

challenged this policy as unconstitutional or alleged sufficient facts to give rise to a genuine issue of material fact as to whether Defendant violated Plaintiff's constitutional rights by denying Plaintiff visitation.

Third, Plaintiff has failed to allege any injury resulting from the denial of a mattress and blanket. Moreover, Defendant has submitted an affidavit averring that Plaintiff was not denied a mattress and blanket. [Doc. 76-2 at 4.] Plaintiff has failed to provide any evidence outside of his assertions that Defendant denied Plaintiff a blanket and mattress. As a result, Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Defendant violated Plaintiff's constitutional rights by denying Plaintiff a mattress and blanket.

Finally, Plaintiff has failed to allege any injury resulting from a denial of showers, and Plaintiff has failed to produce any evidence to contradict Defendant's affidavits that state that Plaintiff was not denied a shower and that Plaintiff also had access to a sink in which Plaintiff could wash himself. [Doc. 76-2 at 4; Doc. 76-3 at 2.] The Fourth Circuit has stated that while a prisoner may prefer a shower, providing a prisoner with water and materials with which to clean himself is not a "depriv[ation] of the minimal civilized measures of human necessities in such a palpable way that injury should be inferred." *Shakka*, 71 F.3d at 168 (holding that prison officials did not violate a prisoner's Eighth Amendment rights by denying the prisoner a shower for three days after the prisoner had human excrement thrown on him when the prisoner had access to water and cleaning materials immediately after informing prison officials of the situation). Therefore, Plaintiff has not demonstrated a genuine issue of material fact as to whether Defendant violated Plaintiff's constitutional rights by denying Plaintiff showers.

Accordingly, Plaintiff has failed to demonstrate sufficient evidence to support a claim of unconstitutional conditions of confinement on these grounds.

**Plaintiff's Claim Regarding Deprivation of Property**

Plaintiff alleges that Defendant deprived Plaintiff of two of Plaintiff's newly drafted legal documents and tore the cover of Plaintiff's Bible. However, a prisoner's claim for deprivation of personal property is not cognizable under § 1983. *Parratt v. Taylor*, 451 U.S. 527, 544 (1981) (holding that a prisoner was "deprived" of his property within the meaning of the due process clause of the Fourteenth Amendment but that the state's tort remedy provided all the process that was due); *see also Drake v. Jones*, No. 08-0156, 2008 WL 2051744 at *3, (W.D. La. March 31, 2008) (holding that if state law remedies are available, no further due process required for prisoner's claims that true balance of account was not transferred when he was transferred to another prison). Here, Plaintiff could have instituted a civil action in the state courts to recover his personal property under S.C. Code § 15-69-10 et seq. Therefore, Plaintiff has failed to establish he has been deprived of any constitutional right.

Further, to the extent that Plaintiff's claim that Defendant deprived Plaintiff of Plaintiff's legal documents constitutes a claim of retaliation impeding Plaintiff's access to the courts, Plaintiff has failed to demonstrate a genuine issue of material fact. Plaintiff has not provided any evidence to refute the affidavit offered by Defendant that neither Defendant nor any HFDC employee took Plaintiff's legal documents. [Doc. 76-4.] Moreover, Plaintiff has not alleged any injury resulting from the alleged deprivation of his legal documents. Consequently, Plaintiff has failed to demonstrate a genuine issue of material fact with respect to the deprivation of his legal documents.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendant's motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin

United States Magistrate Judge

April 7, 2011

Greenville, South Carolina